(17 App. Div. 294.)
### NEW YORK BANK-NOTE CO. v. McKEIGE.

(Supreme Court, Appellate Division, First Department.    May 7, 1897.)

1. TRIAL—FINDING OF FACT—INFERENCE FROM EVIDENCE.
   A disbelief in a fact to which a witness has testified does not warrant an inference of the existence of a contrary fact, as to which no one has testified.
2. ESTOPPEL—TESTIMONY IN PREVIOUS ACTION.
   Defendant is not estopped to say that he had authority from a corporation to make on its behalf the contract sued on merely because plaintiff inferred from defendant's testimony in an action previously brought against the corporation that he had no such authority, and for that reason dismissed the action, where plaintiff did not examine him on that trial with reference to his authority.

Appeal from trial term, New York county.

Action by the New York Bank-Note Company against Frederick McKeige. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for new trial, defendant appeals. Reversed.

Argued before RUMSEY, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.

Gratz Nathan, for appellant.
Edward P. Lyon, for respondent.

RUMSEY, J.    In 1889, the defendant, claiming to be an officer of the Equity Gaslight Company of Brooklyn, ordered to be engraved for that company, by the plaintiff, several plates, upon which were to be printed bonds to be issued by the company.    After the work had partly been done by the plaintiff, the defendant countermanded the order.    The plaintiff, never having been paid for the work which was done, brought an action against the Equity Gaslight Company for the value of the work.    The defense interposed by the Equity Gaslight Company in that case was a denial of the contract.    The suit against that company came on for trial, and, after testimony had been taken upon both sides, the plaintiff requested to be allowed to withdraw a juror, that he might have an opportunity to procure some further evidence.    This was done, and afterwards, without further proceedings in the case, the plaintiff discontinued that action, and thereupon brought this action against McKeige, alleging that in 1889 the defendant, claiming to be an officer of the Equity Gaslight Company, and representing himself to have authority to bind that company by contract, ordered the engraving and printing of these bonds, and further alleging that the gaslight company repudiated the contract and the authority of the defendant to bind it, and also that the defendant did not in fact have the authority which he represented, to bind the said company by contract, and for that reason it demanded damages against the defendant for the value of the work which it had done.    The defendant denied that he did not have authority to bind the Equity Gaslight Company by the contract mentioned in the plaintiff's complaint.    Upon this issue the action came on for trial.    Proof was made by the plaintiff that the defendant was

treasurer of the Equity Gaslight Company at the time the engraving of the bonds was ordered; that he ordered the bonds substantially as alleged in the complaint; that he afterwards countermanded the order; that upon the trial of the action against the Equity Gaslight Company the defendant was sworn as a witness on behalf of the plaintiff in that action and this action, and gave testimony which is set out at length in the minutes; and that afterwards the juror was withdrawn as stated above, and the action was discontinued. It was claimed on the part of the plaintiff here that the testimony of the defendant given in the former action in effect amounted to an assertion that he did not have authority from the Equity Gaslight Company to order the engraving of those plates when he did order them, but that, as he had misled the plaintiff into discontinuing the former action against the Equity Gaslight Company by giving that testimony on the trial of the suit against that company, he was estopped in this action to prove that in fact he did have authority to order the engraving of those bonds at the time that it was done. The learned justice, at the trial term, adopted this contention of the plaintiff, and the question presented here by various exceptions is whether the justice erred in, so doing. The judge at the trial told the jury substantially that if the testimony given by the defendant on the former trial would have led a man of ordinary prudence and business experience to believe that there was no authority on his part to make this contract, and that they did believe that, and that, in conse quence of that, the action was discontinued, then he cannot at this late day say that, "notwithstanding what I did then and what I said then, I did have the authority." To this the defendant excepted, and this exception raises sufficiently the question which is sought to be presented.

It may be said in the first place that there is not one particle of evidence in this case that the former action was discontinued as the result of the testimony given by McKeige upon the other trial, or because of the inferences which were drawn from that testimony. Nobody in behalf of the plaintiff suggests anything of the kind. The juror was withdrawn, and the trial was postponed, as is conceded, to enable the plaintiff to procure the testimony of a witness whom he had neglected to subpœna. There was no suggestion made on' this trial, so far as appears in this record, that the plaintiff was induced to take any action towards discontinuing the action by the testimony of McKeige, and that fact of itself is sufficient to sustain the exception taken by the defendant to that portion of the charge which has been quoted.

But we are of the opinion, upon the whole case, that the plaintiff failed to prove that the testimony of McKeige, so far as it was given, was not true, or such as to warrant the belief that he had no authority to order these bonds. It was stated by one of the plaintiffs' witnesses that McKeige, upon the trial, testified that he had no authority to order the bonds; that he had no authority except such as he derived from his official position. He stated that the board did not authorize him, although he had previously stated differently to the witness. This testimony of the plaintiff's witness must neces-

sarily be construed in view of the more accurate recital of the testimony of McKeige given upon the former trial, as shown by the stenographer's minutes, which were put in evidence here.

It is claimed on behalf of the plaintiff that McKeige did not make to the plaintiff's attorney, before the trial of the former action, a full and complete disclosure of what he intended to swear to upon that trial. The plaintiff's attorney was not sworn to show what was said to him by McKeige before the trial. All the testimony on that subject, except that quoted above, was the following, given by McKeige upon his direct examination:

"Q. Previous to giving testimony upon that trial, did you have conversations with Mr. Pratt, the counsel for the plaintiff, in regard to your testimony? A. I did. Q. And did you, in that conversation, tell him of your having been authorized by the president and other directors to make that contract with the plaintiff? A. I did. Q. So that, if they did not ask you about that conversation, it was not because you had not informed him of that fact? A. Exactly."

The jury were told, in relation to that testimony, that, as it was given by an interested party, they were at liberty to disbelieve it if they saw fit, and we are obliged to believe that they did disbelieve it. But, if they did, a disbelief in that fact does not warrant a belief in some other fact that is not testified to by anybody. If that testimony of the defendant is wholly disbelieved, it does not warrant an inference that the defendant was called upon by the plaintiff's attorney to give him full information about the contract, and that he misled him about it, because nobody testified to that fact, and there is no proof of it; and the fact that McKeige is disbelieved when he says he told the plaintiff's attorney of his having been authorized by the president to make the contract does not warrant an inference that he told the plaintiff's attorney that he had in fact been authorized by the company to make the contract, when nobody testified that any such conversation was had. A disbelief in a fact testified to by a witness does not necessarily warrant an inference of the existence of a contrary fact, not testified to by anybody. It is not the duty of a witness to seek out the attorney of the party who has subpoenaed him, for the purpose of giving him information about the case. All that he is called upon to do by his subpoena is to appear and give testimony. If he is asked about the case before he appears in court, it is his duty, if he tells anything about it, to tell the truth. If he is asked questions and answers them, he is bound to answer truly. If he is asked to tell the whole transaction, and proceeds to do so, he is bound to tell it truly; and that is all that he can be asked to do before he comes into court to give his testimony. If one claims that he is misled to his damage by a statement of the witness made out of court, he is bound to prove that fact; and, in the absence of that proof, no inference of that kind can be drawn.

But we think the testimony of McKeige given upon the trial was not fairly susceptible of a denial of authority on his part to make this contract. It is quite suggestive that although he was sworn as a witness for the plaintiff in that case, and was examined as to the making of this contract, he was not asked by the plaintiff, upon his direct examination, anything at all about his authority to make it.

There was no appearance in that direct testimony of any effort by the plaintiff to ascertain from him that he had authority to order the engraving of those bonds. All the testimony given by him upon that subject was given upon his cross-examination, conducted by the attorney for the gaslight company. That cross-examination, so far as it is material upon this subject, is as follows:

"Q. Who told you to have those bonds engraved? A. The board of directors ordered them. Q. When did they order you to do it? A. Permit me to answer the first question. Q. No; I want you to answer my question. You say the board of directors. I ask you when they ordered you? A. Will you let me finish my first answer, or withdraw that question? Q. Who told you to have these bonds engraved? A. As treasurer of the company, I had them engraved. Q. You had no other authority from the company? A. None whatever. By the Court: Q. Do you mean by that that no resolution was passed formally directing you to have these bonds engraved? A. That is what I mean. Q. You had a set of by-laws, did you not? A. Yes, sir; we did. Q. Have you those by-laws in court? A. I am not connected with the company now. Q. You do not answer my question. A. I have not; no, sir."

The witness was recalled by the plaintiff, and then asked with regard to a meeting at which the issue of the bonds was authorized, and these questions and answers were given:

"Q. Will you please state what was done at that meeting, or some meeting, in regard to having these bonds engraved and printed. A. Nothing formally done. Q. You mean that there was no formal resolution? A. No, sir; not that I recollect. Q. But the formal resolutions referred to the issue of the bonds? A. Yes, sir. Q. State what further was done at that meeting. A. I would not have done it on my own responsibility. Q. Was the matter talked over with you at that meeting? A. I do not know whether it was at that meeting or not. Q. At some meeting? A. I presume it was, or I would not have done it upon my own responsibility. Q. State what you did. A. I cannot fix the meeting. I know I would not have done anything of that kind unless I was asked to. That is the best answer I can give. Q. Was the question of the issuing of these bonds talked over at some meeting that you remember? A. Yes, sir."

The witness then testified that he got the manuscript and matter of the bonds from a director of the company, and that they were given to him to give to the bank-note company, and for the bonds.

Upon the conclusion of the plaintiff's testimony upon that trial, it appears that the defendant's counsel moved to dismiss the complaint, upon the ground that no contract was shown between the Equity Gaslight Company and the New York Bank-Note Company, and no authority is shown in Mr. McKeige to make the contract that has been testified to, and that motion was denied, and the plaintiff's counsel excepted. It thus appears that as the result of the testimony given by the plaintiff in that case, where the proof of the authority to order the engraving depended, so far as appears here, upon the testimony of McKeige alone, the court was of the opinion that sufficient evidence had been given to require the submission of the case to the jury. In that we agree. The testimony given by McKeige there, under all the circumstances, was clearly such as, we think, would warrant an inference that he was acting by the authority of the board of directors when he ordered the engraving of the bonds. It may be that he did not state all that occurred at the time the engraving was decided upon, but it does not appear from his testimony that he was called upon or

permitted at the trial to do anything more than answer categorically the questions that were put to him, and the thing to be decided here is whether those questions were answered truly or not. If they were answered truly, and the witness had no opportunity to give his version of the whole transaction, and the facts were not brought out, because the proper questions were not put to him, he certainly is not responsible for the conclusion which was to be reached as the result of his testimony. The witness upon the stand is required to answer the questions. He is not called upon, and usually is not permitted, to volunteer testimony; and, if counsel do not choose to ask him about a vital fact in the case, he is not responsible if that fact remains unproved. The plaintiff's counsel did not ask him about his authority. He asked him simply a set of questions which he was obliged to answer categorically. He gave him no opportunity to state whether he had authority or not, and, in view of that fact, the plaintiff certainly has no right to complain now that McKeige did not upon that trial give some information about a fact vital to the plaintiff's case, which the plaintiff gave him no opportunity to speak of. No man can be estopped for a failure to do something which he has no opportunity to do, and which it is not his duty to do. It appears here, without any contradiction, that that was the precise situation of McKeige upon that trial. For that reason, it was error of the court to submit to the jury the question whether he was estopped; and for that error, without considering the numerous other exceptions, the judgment and order must be reversed, and a new trial ordered, with costs to the appellant to abide the event of the action. All concur.

---

(17 App. Div. 303.)

### MATTHEWS v. STUDLEY et al.

(Supreme Court, Appellate Division, First Department. May 7, 1897.)

2. TRUSTS—CREATION—PAYMENT OF ANNUITIES.
    Testator, after giving annuities to various persons, which he directed his executors to pay out of the estate, gave the residue of his estate, "always subject to the foregoing gifts," to the executors in trust, to receive the rents and income and distribute them among certain persons. *Held*, that the payment of the annuities was not one of the purposes of the trust.

Appeal from special term, New York county.

Argued before RUMSEY, PATTERSON, O'BRIEN, INGRAHAM, and PARKER, JJ.